[Cite as *State v. Hough*, 2021-Ohio-2198.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 19AP-682<br>(C.P.C. No. 17CR-6061) |
| Richard M. Hough | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 29, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Richard M. Hough, appeals the September 12, 2019 judgment of the Franklin County Court of Common Pleas convicting him, pursuant to a jury verdict, of one count of aggravated vehicular homicide, a felony of the second degree, one count of aggravated vehicular homicide, a felony of the third degree, three counts of aggravated vehicular assault, felonies of the third degree, three counts of vehicular assault, felonies of the fourth degree, and one count of operating a motor vehicle while

under the influence of a drug of abuse, a misdemeanor of the first degree.[1]  For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2}  By indictment filed November 7, 2017, plaintiff-appellee, State of Ohio, charged Hough with the following offenses arising out of an August 8, 2017 vehicular accident: one count of aggravated vehicular homicide, a felony of the second degree, in violation of R.C. 2903.06; one count of aggravated vehicular homicide, a felony of the third degree, in violation of R.C. 2903.06; three counts of aggravated vehicular assault, felonies of the third degree, in violation of R.C. 2903.08; three counts of vehicular assault, felonies of the fourth degree, in violation of R.C. 2903.08; one count of operating a vehicle under the influence of alcohol or a drug of abuse or a combination of them, a misdemeanor of the first degree, in violation of R.C. 4511.19 ("OVI") and (impaired count); and three counts of operating a motor vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance, misdemeanors of the first degree, in violation of R.C. 4511.19 (per se counts).

{¶ 3}  On December 1, 2017, Hough entered a plea of not guilty.  On April 12, 2019, Hough filed a motion for psychiatric evaluation "pursuant to Section 2945.37" and motion for competency evaluation "pursuant to Section 2945.37."  Without a hearing, on April 18, 2019, the court entered an order denying the motion for a psychiatric evaluation.

{¶ 4}  On August 23, 2019, Hough filed a motion to suppress evidence, tests, and test results as being in violation of his Fourth, Sixth, and Fourteenth Amendment rights to the U.S. Constitution.  In the motion, Hough argued suppression was warranted because his blood draw was conducted a couple minutes outside the three-hour window required by statute. The jury trial began on August 26, 2019 following several

---

[1] Here we note two discrepancies between the September 12, 2019 judgment entry and the indictment. The judgment entry states Hough was found guilty of Count 3 of the indictment, to wit: aggravated vehicular homicide, in violation of R.C. 2903.06, a felony of the third degree; however, Count 3 of the indictment alleged aggravated vehicular assault, in violation of R.C. 2903.08, which was consistent with the trial court's reading of the counts to the jury as well as the reading of the jury's verdicts in the transcript.

The judgment entry also states that Hough was found guilty of Count 8 of the indictment, to wit: vehicular assault, in violation of R.C. 2903.08,  a felony of the third degree; however, Count 8 of the indictment alleged vehicular assault, in violation of R.C. 2903.08, a felony of the fourth degree, which was consistent with the trial court's reading of the counts to the jury, as well as the reading of the jury's verdicts in the transcript.

continuances granted by the court. The court addressed the motion as a pretrial matter on the day of trial and stated:

> THE COURT: [R]ight now, based on the information I'm hearing, [the blood draw] was over three hours, even though it was a minute or two. It seems somewhat technical.
>
> I would not allow a "per se" instruction right now, but I'll listen to the evidence. I'm not going to hold a hearing on this because it's clear it was after three hours, and the law seems to be clear you don't suppress it. It still comes in. You just don't get the instruction on "per se."
>
> Again, I'm going to review the law a little closer, but I did some of this work when I was in practice. I'll allow them to have their expert testify, and you can cross-examine.

(Tr. at 11-12.) Counts 10, 11, and 12 of the indictment, the operating a vehicle while under the influence per se counts, were subsequently dismissed prior to jury deliberations on the basis that Hough's blood sample was taken outside the three-hour window required for those counts in accordance with *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629.

{¶ 5} At trial, the state called David Cotter to testify. Cotter testified to driving on U.S. Route 33 in Franklin County, Ohio, when a maroon Chevrolet SUV passed him at a high rate of speed. Cotter described the vehicle as traveling in the grass median, driving on the berm, and driving the wrong way up a ramp to Refugee Road. Cotter did not see the accident, but upon seeing a maroon vehicle on the news the next morning he contacted police. Cotter described the driver to police as a white, middle-aged male with short hair.

{¶ 6} The state called Columbus Police Officer Duane Ward, the first responding officer at the scene, to testify. He testified he was dispatched about 12:49 p.m. and arrived at an injury accident between a blue Nissan Sentra and maroon Chevrolet Tahoe, and the Tahoe was facing the wrong way on the ramp. Inside the Sentra were four occupants and Hough was seated on the ground outside the Tahoe.

{¶ 7} The state called Columbus Police Detective Robert Barrett to testify. Detective Barrett obtained the warrant for Hough's blood draw after receiving a call from Officer Ward about Hough's suspected OVI. The time of blood draw listed on the vials drawn was marked as 3:48 p.m.; however, body cam footage put the blood draw beginning at 3:50:55 and ending at 3:53:50 p.m. The laboratory results of the blood draw revealed

the blood contained 85 ng/ml of carboxy-THC, a metabolite of marijuana, 236 ng/ml of cocaine, and 2,340 ng/ml of benzoylecgonine, a metabolite of cocaine.

{¶ 8} The state called Dr. John Wyman, a forensic toxicologist, to testify. Dr. Wyman using retrograde or reverse extrapolation opined that at the time of the crash, Hough had more than 900 ng/ml of cocaine in his blood, and this level would cause confusion, disorientation, slowed reaction times, anxiety, and irritation. Dr. Wyman testified:

> Based on reports of erratic and reckless driving, uncooperative/belligerent behavior, and the cocaine levels described above, it is my opinion, to a reasonable degree of scientific certainty, that the level of cocaine in Mr. Hough's system resulted in impaired driving and, more likely than not, contributed to his crashing his vehicle.

(Tr. at 319.)

{¶ 9} On August 29, 2019, the jury found Hough guilty on Counts 1 through 9. The trial court granted Hough two weeks to prepare a mitigation report prior to sentencing.

{¶ 10} On September 12, 2019, the trial court filed a judgment entry reflecting the jury's verdict finding Hough guilty on all submitted counts. The court noted several counts merged and Hough was sentenced to 6 years on Count 1, as well as 3 years on Counts 3, 5, and 7, to be served consecutive to Count 1 and to each other, and 6 months on Count 9 to be served concurrently, for a total of 15 years.

{¶ 11} On October 7, 2019, Hough filed a timely notice of appeal to this court.

## II. Assignments of Error

{¶ 12} Hough assigns the following three assignments of error for our review:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED VEHICULAR HOMICIDE; AGGRAVATED VEHICULAR ASSAULT; VEHICULAR ASSAULT; AND OPERATING A VEHICLE UNDER THE INFLUENCE OF A DRUG OF ABUSE, AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND

WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY NOT CONDUCTING A HEARING ON HIS MOTION FOR A COMPETENCY EVALUATION.

III. APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE, THEREBY DENYING HIM HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

## III. Analysis

### A. Sufficiency of Evidence and Manifest Weight

{¶ 13} In his first assignment of error, Hough contends there is insufficient evidence supporting his guilty findings for aggravated vehicular homicide, aggravated vehicular assault, vehicular assault, and OVI, and that these findings are against the manifest weight of the evidence. We address these claims together.

{¶ 14} Sufficiency of the evidence is a legal standard that tests whether the evidence is adequate to sustain a verdict as a matter of law. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11; *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Jenks* at 260.

{¶ 15} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25. The Supreme Court of Ohio has stated:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect* in inducing belief."

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶ 16} When evaluating a challenge to a verdict as being against the manifest weight of the evidence, "an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 12, citing *Thompkins* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In reviewing the evidence, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 17} Hough's argument on appeal challenges the issue of identity, ultimately taking issue with the finding that Hough was the driver of the maroon Tahoe involved in the accident. The principal evidence upon which Hough's argument lies is that the sole eyewitness to the incident, Cotter, testified to the driver being White, yet Hough is Black.

{¶ 18} The state's response to this argument is that only one person was found at the scene near the Tahoe and there is no other evidence that anyone else was driving the Tahoe. Additionally, the state notes that Hough did not deny to Officer Ward that he had been driving when asked what happened. Lastly, the state offers the testimony of Cotter

that he only saw a single person in the vehicle despite his uncertainty regarding the driver's skin tone.

{¶ 19} Both parties agree that Hough was seated outside of the Tahoe, but Hough argues there is some discrepancy regarding the distance from the Tahoe that he was seated. This difference in distance comes from the testimony of Columbus Fire Department Lieutenant Phil Biggs who testified he found Hough seated about 40 feet away from the Tahoe, and the testimony of Officer Ward who, while viewing state's exhibit 12, testified Hough was seated two to three feet from the position of the person standing in the photograph. However, Officer Ward further testified that, when he arrived, the person depicted standing in the photograph was not at that location. While the distance may be in dispute, we look to the totality of the facts and consider the testimony of both Lieutenant Biggs and Officer Ward in determining this assignment of error.

{¶ 20} The jury, in assessing the facts and deciding a verdict, is permitted to make reasonable inferences from facts. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Moreover, "[t]he identity of a perpetrator may be established by the use of direct or circumstantial evidence." *State v. Mickens*, 10th Dist. No. 08AP-626, 2009-Ohio-1973, ¶ 18. "Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind." *State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 30. Circumstantial evidence can have the same probative value as direct evidence, and a conviction can be sustained based on circumstantial evidence alone. *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991).

{¶ 21} The evidence viewed in a light most favorable to the prosecution sustains the conviction of Hough on all counts. Hough was the only individual found near the scene of the accident, only the driver side airbag of the Tahoe deployed, and Hough did not contest that he was the driver when asked what happened. When asked by Officer Ward if he was okay, Hough responded "[a]hh, man" in a tone "[l]ike he was upset." (Tr. at 262.) While Cotter testified to his description of a White male driving, he expressed uncertainty in that description based on the short length of time he was able to see the

driver and the lighting that day.[2]  Based on the above evidence, any rational trier of fact could have found the essential elements of the offered counts proven beyond a reasonable doubt.  Additionally, based on our review of the record, weighing the evidence and reasonable inferences arising from that evidence and considering the credibility of the witnesses, we cannot find that the jury lost its way and caused a manifest miscarriage of justice in convicting Hough.

{¶ 22}  Accordingly, we overrule Hough's first assignment of error.

## B.  Failure to Hold Competency Hearing

{¶ 23} In his second assignment of error, Hough contends the trial court committed prejudicial error by its failure to conduct a hearing on his motion for a competency evaluation.

{¶ 24} "It has long been recognized that 'a person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.' " *State v. Smith*, 89 Ohio St.3d 323, 329 (2000), quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975). Pursuant to R.C. 2945.37(G), "[a] defendant is presumed to be competent to stand trial." However, if, after a competency hearing, the defendant is found by a preponderance of the evidence to be "incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial." R.C. 2945.37(G). "Fundamental principles of due process require that a criminal defendant who is legally incompetent may not be tried." *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, ¶ 36, citing *State v. Berry*, 72 Ohio St.3d 354, 359 (1995).

{¶ 25}  "[A] trial court must hold a competency hearing if a request is made before trial." *State v. Were*, 94 Ohio St.3d 173 (2002), paragraph one of the syllabus. Pursuant to R.C. 2945.37(B):

> In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised *before* the trial has commenced, the

---

[2] Specifically, when trial counsel asked Cotter to recount his statement to Detective Dan Perez about the driver, Cotter stated he thought it was a White person, "[b]ut the sun was very bright that day, plus I was driving - - I was still moving, so I was looking at a glance as I was going by." (Tr. at 187.)

> court *shall* hold a hearing on the issue as provided in this section.

(Emphasis added.) However, failure to hold a hearing may be found to be harmless error where the record fails to reveal sufficient indicia of incompetency. *State v. Bock*, 28 Ohio St.3d 108, 110 (1986).

{¶ 26} To determine competency, the court may order an evaluation of the defendant's mental condition. Pursuant to R.C. 2945.371(G)(3)(a), an examination ordered to determine competency shall include, among other facts and findings, findings or recommendations regarding whether the defendant is capable of understanding the nature and objective of the proceedings or capable of assisting in the defense. If the examiner's opinion is that the defendant is incapable, findings by the examiner of whether defendant has an intellectual disability or mental illness shall be included in the report. If present, the report shall further include whether the examiner believes institutionalization by court order is appropriate for intellectual disability, whether the defendant can become capable of competency within one year with treatment, and the recommendation as to the least restrictive placement or commitment alternative consistent with the defendant's treatment needs for restoration to competency and the safety of the community. R.C. 2945.371(G)(3)(b) through (d). If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings or of assisting in his own defense, the court shall find the defendant incompetent to stand trial. R.C. 2945.371(G).

{¶ 27} Hough begins his argument by focusing on the order entered April 18, 2019 denying his motion for competency evaluation. Hough points to the trial court's reliance on Crim.R. 11(H) and *State v. Curry*, 2d Dist. No. 2012-CA-50, 2014-Ohio-3836, to show that "the trial court appears to have believed that [Hough] had requested a sanity evaluation." (Hough's Brief at 3-4.) Hough argues it was on this belief that the court denied his motion without a hearing for lack of timeliness and lack of evidence. Hough argues this was improper pursuant to R.C. 2945.37.

{¶ 28} Hough then relies on *Were* in support of his argument that a trial court must hold a competency hearing if the request is made prior to trial. Hough also relies on *Were*

for the proposition that it is reversible error for the trial court to fail to hold a competency hearing when the record is replete of instances that call into question a defendant's competence.  Hough argues the record before us also reveals evidence of incompetence and, in support, refers to the psychological evaluation ordered by the court at the request of Hough at the conclusion of trial for purposes of preparing a sentencing mitigation report.  Hough specifically relies on the report's finding that he has " 'severe mental illness and intellectual/cognitive deficits.' " (Hough's Brief at 7, quoting McConnell Report at 33.)

{¶ 29} The state concedes Hough's contention that the court believed the request was to determine Hughes' mental condition at the time of the offense is not incorrect. (State's Brief at 8.)  However, the state suggests that the court believed the two motions were the same, given they were "nearly identical and were filed at exactly the same time." (State's Brief at 9.)  The state also argues that neither motion included a memorandum in support nor gave any facts to support the requests.

{¶ 30} The state asserts the court, through its interactions with Hough, could have determined competency and was in the best position to assess signs of incompetency.  The state notes that Hough engaged in no outbursts, did not indicate difficulties with counsel, was represented by two lawyers, and trial counsel only raised the issue of competence a single time prior to trial, and once the motion was denied did not raise the issue again until sentencing despite ample opportunity.

{¶ 31} Addressing Hough's mental health issues, the state relies on precedent of this court and cases from the Eighth District Court of Appeals following *Bock* for the proposition that emotionally disturbed or psychotic defendants may be found capable of achieving competency, and that evidence of the same does not provide sufficient indicia for finding reversible error.  (*See* State's Brief at 18-19, citing *State v. Morales*, 10th Dist. No. 03AP-318, 2004-Ohio-3391, *State v. McNeir*, 8th Dist. No. 105417, 2018-Ohio-91, *State v. Moore*, 8th Dist. No. 108692, 2020-Ohio-3459, and *Thompson*.)  The state argues in the alternative, that if the court finds reversible error, the court should remand the issue to determine competency pursuant to *State v. Archie*, 10th Dist. No. 89AP-804 (Sept. 27, 1990).

{¶ 32} In this case, on April 12, 2019, Hough submitted two very similar motions: a motion for psychiatric evaluation and a motion for competency evaluation. Neither motion was accompanied by a memorandum in support.  In support of his request for evaluation of both Hough's then-present mental condition and mental condition at the time of the offense, Hough's trial counsel simply stated "[f]acts having come to defense counsel's attention pertaining to [Hough's] psychiatric state, [Hough], through counsel moves the court * * * to have [Hough] referred * * * for examination." (Mot. for Competency Eval.)  Without a hearing, on April 16, 2019, the court entered an order and entry denying Hough's motion for a psychiatric evaluation. The court's order noted "[Hough] * * * is requesting that the Court order a psychiatric evaluation to 'determine [his] mental condition at the time of offense.' " (Order at 1.) After the court discussed Hough's plea, the court cited Crim.R. 11(H) and *Curry* to support denying the motion for lack of timeliness, as well as a failure "to submit any evidence of his competency at the time of the offense other than the request in the motion."  (Order at 2.)  In the order's final lines, the court expressed incredulity that "in seventeen months of contact with [Hough] counsel did not realize, or recognize, that [Hough] may have been insane at the time of the offense." (Order at 2.)  Although it does appear the trial court's order referred to the mental state of Hough at the time of the offense, we note that Hough's counsel at sentencing expressed to the court her understanding that the motion for competency evaluation was also denied.  (*See* paragraph 34 below.)

{¶ 33} After denial of the motion for psychiatric evaluation, counsel did not raise again the motion for competency evaluation.  Additionally, during trial, counsel did not raise the issue of competency.  A request for psychiatric evaluation was not raised again until after the jury verdict was delivered, and it was requested for the distinct purpose of preparing a sentencing mitigation report:

> MS. PLAIR: Your Honor, if you remember, you agreed to give me a time period to have a mitigation report done at sentencing with a report by Dr. Tilley.
>
> THE COURT: I know he suffers from a lot of issues. It's in the hospital records. I don't think whatever Dr. Tilley is going to say is going to affect my opinion about what the sentence would be.

MS. PLAIR: We would like the opportunity to convince you.

* * *

THE COURT: When did I tell you that?

MS. PLAIR: It was before I went out for surgery.

THE COURT: If he was convicted?

MS. PLAIR: Yes, that we would be able to do a mitigation report.

* * *

THE COURT: If I told you I would do it, I believe you. We'll sentence him in two weeks. You've got two weeks to get a report together. You should be able to get that together.

(Tr. at 559-61.)  The court granted the request for a psychiatric evaluation.

{¶ 34} The evaluation took place between September 9 and 10, 2019, within two weeks of when the trial concluded, August 26 through 29, 2019.  The report was dated September 11, 2019.  Sentencing was held September 12, 2019.  At the sentencing hearing, the court reviewed the report and again counsel did not object to the trial court not holding an initial hearing as to competency, nor did counsel request an additional hearing as to competency after having reviewed the psychological evaluation.  The record reveals the sentencing hearing was the only other time counsel mentioned Hough's competency when the following exchange occurred:

MS. PLAIR: He has some very real diagnoses. He has shown over the course of this case tendencies to lose focus. Sometimes he responds to external stimuli to where it made me wonder whether or not he was competent. I tried to pull all the medical records that I could to get the background on whether or not he was competent.

* * *

Please understand that competency and the other diagnoses that he has may seem like an excuse, but they're very real when it comes to a criminal case. If he is hearing voices and does not know who he is and he thinks God is speaking to him, that goes

> to the heart of whether or not he can stand and/or sit in front of a Court and actually be helpful in his defense.
>
> I did bring up to the Court my concerns about his competency. I filed a request to have his competency reviewed, and it was denied.
>
> THE COURT: Yeah, two years into the case, so don't even get me started on that, okay? If you want to get started on that, I'm happy to get started on that, because you had two years to do that.
>
> MS. PLAIR: I am not getting into that. I am simply making a record that one was made, and it was denied. Competency is very fluid. You can be competent one moment, and two years later you may not be competent. I can't file for competency before I see a reason to do so. He has not failed to take responsibility for this. He has shown incredible remorse for what has happened.

(Tr. at 589-91.) However, there was no mention by counsel of the need for a hearing on competency before, during, or after this exchange. Furthermore, importantly, Hough's counsel points us to no place in the record revealing any outward expression or manifestation by Hough himself of a lack of understanding of the nature and objective of the proceedings or of an inability to assist in his own defense. On our own review, we find no place in the record revealing the same.

{¶ 35} In the psychological evaluation report, examiner A.J. McConnell, Psy.D. prefaced his discussion noting that Hough's counsel had referred Hough to him "for a psychological evaluation to assess mitigating factors in preparation for an upcoming sentencing hearing." (Psychological Eval. Report at 1.) The report did not include any findings or recommendations as to competency as required by R.C. 2945.371(G)(3). Dr. McConnell noted that Hough reported he had been hospitalized for psychiatric purposes three to five times and that he had attempted suicide five times, with three of the occurrences taking place after the automobile accident. Dr. McConnell noted that, one week prior to the accident, Hough was hospitalized after having been found lying in the street. At the time, Hough claimed that someone was chasing him, and they were in the trees.

{¶ 36} Dr. McConnell remarked that based on his interactions with Hough, that Hough appeared to be attending to internal stimuli and seemed confused at times while being evaluated although he was cooperative and attempted every task asked of him. Hough admitted to experiencing auditory and visual hallucinations in the past and at the time of the evaluation.[3] Additionally, Dr. McConnell noted Hough seemed alert and fully oriented to his examination and able to state details such as names of family members, the facility, city, and state where the meeting took place, although he could not state the day of the week, date, month, or year. Dr. McConnell noted Hough's attention and concentration were fair and there were no obvious problems with short term memory retention, although there were mild deficits in his recent past memory and remote memory. Hough recognized he was in jail and had an upcoming hearing. He also understood the evaluation took place per the request of his counsel and the court and reported that he had been charged with vehicular homicide stemming from an accident on August 8, 2017.

{¶ 37} Testing results outlined by Dr. McConnell included that Hough scored just above the "extremely low" range in the verbal comprehension index. The score was in the 0.4th percentile of his same-aged peers and measured Hough's verbal concept formation, verbal reasoning, and knowledge acquired from an individual's environment. Hough scored in the "extremely low" range of the Full Scale IQ test, in the 0.3rd percentile. Regarding his memory, Hough's auditory memory index score was in the 21st percentile (low average), his immediate memory index score was in the 34th percentile (average), and his delayed memory index was in the 9th percentile (low average). In the evaluation report, Dr. McConnell stated: "The Auditory Memory Index assesses the individual's ability to remember information that is presented orally. * * * The Immediate Memory Index assesses the individual's ability to remember information immediately after it is presented to him. * * * The Delayed Memory Index assesses the individual's ability to remember information after a 20-30 minute delay." (Psychological Eval. Report at 25-

---

[3] Dr. McConnell observed: "Mr. Hough also admitted to experiencing auditory hallucinations at the time of this evaluation. For example, he appeared to turn his head towards the wall and when he reestablished eye contact with me, I asked him if he was ok. He responded, 'I think I'm hearing things.' Of note, we were in a room in which external noise, such as other people talking and music playing on the other side of the wall, was audible. Still, Mr. Hough appeared to be attending to internal stimuli." (Psychological Eval. Report at 15.)

26.) Additionally, Hough was tested for malingering on the memory tests to distinguish between feigned memory deficits and true memory impairments. Dr. McConnell found testing did not indicate malingering by Hough. The opinion of Dr. McConnell was that Hough met "DSM-5 diagnostic criteria for Other Specified Schizophrenia Spectrum and Other Psychotic Disorder."[4] (Psychological Eval. Report at 30.) However, he opined that "[i]t is also possible that Mr. Hough's presentation is best explained by a Major Depressive Disorder, Recurrent, Severe with Psychotic Features." (Psychological Eval. Report at 30.) At the time of the evaluation, Hough was also found to have presented with "substantial intellectual and cognitive deficits * * * and [his abilities] are equivalent to the intellectual/cognitive abilities of an individual with an Intellectual Disability." (Psychological Eval. Report at 31-32.)

{¶ 38} The Supreme Court has noted that a defendant may have a mental disability and still be capable of understanding the nature and objective of the proceedings against him or her and assist in his or her defense. *See Bock* at 110. This is consistent with R.C. 2945.37(F), which requires that:

> The court shall not find a defendant incompetent to stand trial *solely* because the defendant is receiving or has received treatment as a voluntary or involuntary mentally ill patient under Chapter 5122. or a voluntary or involuntary resident with an intellectual disability under Chapter 5123. of the Revised Code or because the defendant is receiving or has received psychotropic drugs or other medication, even if the defendant might become incompetent to stand trial without the drugs or medication.

(Emphasis added.)

{¶ 39} The Supreme Court in *Bock* addressed whether failure to hold a competency hearing rose to the level of reversible error. The court made clear "there is no question that where the issue of the defendant's competency to stand trial is raised prior to the trial, a competency hearing is mandatory." *Bock* at 109. However, the court also determined that failure to hold a hearing is reversible error only when that failure resulted in the violation of a constitutional right and this question is approached on a case-by-case

---

[4] "This diagnosis is characterized by symptoms that cause clinically significant distress and/or impairment in functioning but do not meet full diagnostic criteria for any other disorder in the schizophrenia spectrum and other psychotic disorders diagnostic class." (Psychological Eval. Report at 30.)

basis. *Id.* at 110. The test to determine whether the court's failure to hold a competency hearing constitutes a violation of a Constitutional right is whether the record contains sufficient indicia of incompetency such that a formal inquiry into the defendant's competency is necessary to protect his right to a fair trial. *Id.*

{¶ 40} In *Bock*, Bock's counsel requested a competency hearing alleging Bock was in the hospital for drug-related problems. *Id.* at 110. The trial court ordered an examination of Bock, but the record reveals no further action—no report was filed and no hearing was held. *Id.* at 108. The court observed that Bock testified regarding "his emotional distress and comments about suicide," but also that "[he] testified extensively at trial under direct, cross-, redirect, and recross-examinations with no apparent behavior" that suggested incompetency. *Id.* at 110-11. Trial counsel in *Bock* did not raise the issue of Bock's competency again until the time for appeal. *Id.* at 111. Based on these facts, the court noted that Bock's testimony regarding emotional distress and suicide, "alone is not sufficient to indicate a lack of competency," and "the record reveals no adequate indication of any behavior on the part of the defendant which might indicate incompetency." *Id.* at 110-11. The court found there was not a sufficient indicia of incompetency, and the failure to hold a hearing, even when requested prior to trial, was harmless error. *Id.*

{¶ 41} The Supreme Court also dealt with the issue of a defendant's competency in *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325. In *Braden*, the court found trial counsel was not deficient in failing to raise the issue of competency, despite a psychologist testifying "that Braden believed that he would not be tried because God would deliver him and noted that he was becoming more distrustful and dismissive of his lawyers." *Braden* at ¶ 113. Of note, the psychologist diagnosed Braden as suffering from paranoid schizophrenia; yet, the psychologist still found Braden competent. The court, citing *Bock,* noted that a paranoid schizophrenia diagnosis "is not synonymous with incompetence to stand trial." *Id.* at ¶ 116. The court further noted the record did not reflect any behavior by Braden during trial that suggested the lack of legal competency. *Id.* at ¶ 117.[5]

---

[5] In *Braden*, the court noted specifically that Braden "answered the trial court's questions about visits from Dr. Burch [the doctor who diagnosed him with paranoid schizophrenia], expressed satisfaction with his counsel, told the judge he understood his appellate rights, said he did not want a presentence investigation and informed the court that he did not wish to make a statement prior to sentencing." *Id.*

{¶ 42} In *State v. Prophet*, 10th Dist. No. 14AP-875, 2015-Ohio-4997, this court addressed whether the trial court's failure to sua sponte order an evaluation to determine Prophet's competency to enter a guilty plea was a violation of the notion of fundamental fairness and due process. This court observed that "the right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains 'sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." *Prophet* at ¶ 12, citing *Drope*. This court further noted that factors to be considered included doubts expressed by trial counsel as to a client's competency, evidence of irrational behavior, the defendant's demeanor, and any prior medical opinions concerning the defendant's competency. *Id.* at ¶ 14.

{¶ 43} Upon an examination of the record, this court found the various interactions between Prophet and the court showed an understanding by Prophet of the nature of the charge against him and the proceedings. *Id.* at ¶ 19. Specifically, we noted Prophet "affirmed during the plea colloquy that he understood the nature of the charges against him," that he discussed the case with the attorney, and "that he understood that the decision of whether to go to trial or plead guilty was completely up to him, and assured the court that no one had threatened him or promised him anything to induce him to change his plea." *Id.* at ¶ 5. Moreover, this court held that Prophet's diagnosed mental illness did not rise to the level of providing sufficient indicia of incompetency. *See id.* at ¶ 20-21. Following well-established precedent, we noted that having a mental illness does not equate with a finding of legal incompetency. *Id.* at ¶ 21. Thus, we found no reversible error. *Id.* at ¶ 27.

{¶ 44} As noted previously, Hough relies on *Were* in support of his argument that the trial court committed reversible error in not holding a hearing on competency. In *Were*, the Supreme Court of Ohio found the record was "replete" with indicia of Were's incompetency and, as a result, the trial court committed reversible error by failing to hold a competency hearing. *Were* at 175. Of note, trial counsel raised the issue of competency by motion, after opening arguments, during trial, and before mitigation. *Id.* Additionally, "on many occasions, defense counsel directly or indirectly represented to the [trial] court that they believed [Were] to be incompetent." *Id.* The basis for his trial counsel's belief

was Were exhibited signs of paranoia that caused trial counsel to file two motions to withdraw and a motion for continuance. *Id.* at 175-76. Furthermore, trial counsel informed the court that Were refused to speak with the defense team, and trial counsel consistently claimed that Were's "failure to cooperate seriously hampered their ability to present a defense." *Id.* at 176. This was consistent with the actions of Were who filed multiple pro se motions to dismiss his attorneys on grounds the defense team was "racially biased, had threatened his life, were conspiring with the prosecution, and had failed to adequately prepare for the mitigation phase." *Id.* Based on this evidence, the Supreme Court of Ohio found the trial court committed reversible error in not holding a hearing. *Id.* at 177.

{¶ 45} The facts in the case before us are distinguishable from the facts in *Were*. Unlike in *Were*, Hough's trial counsel did not raise the issue of competency repeatedly. Here, trial counsel made a single motion for a competency evaluation. Another request for an evaluation was made after trial had concluded, but that request was not for the purpose of evaluating competency but, instead, for mitigation in sentencing. Unlike in *Were*, Hough's trial counsel did not make multiple attempts to convey to the trial court they believed Hough to be incompetent, or that the actions and beliefs of Hough resulted in his failure to cooperate, thus hampering their ability to provide a defense. Lastly, unlike in *Were*, here there were no actions taken by Hough that would bolster such arguments, such as pro se motions to dismiss his attorneys for reasons that might lead the court to question his competency.

{¶ 46} Furthermore, in the case before us, the record is not replete with indicia of incompetency. Moreover, neither the trial court, trial counsel, nor prosecutor expressed anything on the record during trial regarding Hough's behavior or speech during off-the-record interactions. It is important to remember that the trial court and trial counsel's ability to observe Hough "in the context of the trial and * * * gauge from his demeanor whether he was able to cooperate with his attorney and * * * understand the nature and object of the proceedings" positioned them to make such remarks on the record. *See Drope* at 181 (discussing the impact of the petitioner's absence during trial in determining whether the record contained an indicia of incompetency). The trial record is silent in

this regard. Without any indicia of incompetency on the record, Hough relies solely on the psychiatric evaluation as an indicia of competency.

{¶ 47} Looking to the psychological evaluation, taken as a whole, there is not a sufficient indicia of incompetency. It is clear Hough suffers from mental illness and has limited intellectual/cognitive functioning. However, as is made clear in *Bock*, *Braden*, and *Prophet*, mental illness alone is not necessarily sufficient for a finding of legal incompetence.

{¶ 48} Here, Hough is similarly situated to the defendants in *Bock, Braden*, and *Prophet* in that the psychological evaluation revealed suicide attempts, emotional distress, diagnoses of paranoia and schizophrenia, and other mental illness. Although in *Bock*, *Braden*, and *Prophet* the court had more interaction with the defendants than the court in this case did with Hough, R.C. 2945.37(G) requires us to presume the defendant was competent to stand trial unless a preponderance of the evidence showed him to be incapable of understanding the nature and objective of the proceedings against him or of assisting in his defense.

{¶ 49} Furthermore, we note there is an indication in the psychological evaluation and by trial counsel that Hough understood the proceedings against him. In *Prophet*, in determining whether there were sufficient indicia of incompetency, the court considered that Prophet stated he understood the nature of the charges against him. Here, the psychological examiner noted Hough understood he was in jail, had an upcoming hearing, he was being examined at the request of his counsel, and he had been charged with vehicular homicide stemming from the August 8, 2017 accident. Additionally, trial counsel stated Hough has shown remorse and taken responsibility for his actions, which suggests he has an appreciation for the nature of the charges. On the facts of this case, we cannot say the psychiatric evaluation alone provides sufficient indicia of incompetence and that the trial court's failure to hold a hearing on competency resulted in prejudicial error. Thus, we find the failure of the trial court to hold a competency hearing on Hough's pretrial request for competency evaluation, while error, to be harmless since the record lacks sufficient indicia of incompetency.

{¶ 50} Accordingly, we overrule Hough's second assignment of error.

## C. Ineffective Assistance of Counsel

{¶ 51} In his third assignment of error, Hough contends his trial counsel was ineffective by failing to contest the introduction of results of lab tests of his blood, conducted more than three hours after the operation of the Tahoe, revealing the presence of marijuana and cocaine. Specifically, Hough argues his trial counsel was ineffective for failing to object to Dr. Wyman's opinion testimony, based on the process of reverse extrapolation, that at the time of the accident Hough's blood contained more than 900 ng/ml of cocaine. In closing argument, the state pointed to Dr. Wyman's testimony as evidence of Hough being "impaired" and thus guilty of Counts 1, 3, 5, 7, and 9, all containing "impairment" as an element necessary to prove for conviction. Hough argues that the reverse extrapolation process is only appropriate for calculating the presence and amount of ethanol, not other drugs such as cocaine since the elimination rate from the body for drugs is not constant over time, whereas the elimination rate for ethanol is constant. Hough argues that the process used for drugs is an "unsound scientific process." (Hough's Brief at 16.)

{¶ 52} We apply a two-part test to evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland* at 687. Further, "[t]he failure to make either showing defeats a claim of ineffective assistance of counsel." *State v. Kennard*, 10th Dist. No. 15AP-766, 2016-Ohio-2811, ¶ 14, citing *Bradley* at 143.

{¶ 53} In order to "demonstrate that counsel's performance was deficient, [the defendant] must show that his counsel committed errors which were ' "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ' " *Id.* at ¶ 15, quoting *State v. Phillips*, 74 Ohio St.3d 72, 101 (1995), quoting *Strickland* at 687. "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011), quoting

*Strickland* at 688-89. "[A] properly licensed attorney is presumed competent [and the defendant] bears the burden of proving that his trial counsel was ineffective." *State v. Hamblin*, 37 Ohio St.3d 153, 155-56 (1988), citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301 (1965).

{¶ 54} In addition to establishing deficient performance, prejudice must also be established such "that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, ¶ 10, citing *Bradley* at paragraphs two and three of the syllabus. " ' "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " *Id.*, quoting *Bradley* at 142, quoting *Strickland* at 694. Furthermore, this court has stated "a trial counsel's failure to object to testimony does not amount to ineffective assistance of counsel unless the defendant can demonstrate a reasonable probability that, but for his counsel's failure to object, the result of the proceedings would have been different." *State v. Thompson*, 10th Dist. No. 18AP-211, 2019-Ohio-2525, ¶ 15, citing *State v. Watts,* 10th Dist. No. 15AP-951, 2016-Ohio-5386, ¶ 42, citing *State v. Valentine*, 10th Dist. No. 14AP-893, 2016-Ohio-277, ¶ 24.

{¶ 55} Furthermore, " '[i]n order to prevail on a claim of ineffective assistance of counsel in a case involving a failure to make a motion on behalf of a defendant, the defendant must show "(1) that the motion * * * thereto was meritorious, and (2) that there was a reasonable probability that the verdict would have been different had the motion been made." ' " *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 107, quoting *State v. Peterson*, 10th Dist. No. 07AP-303, 2008-Ohio-2838, ¶ 55, quoting *State v. Lawhorn*, 3d Dist. No. 11-04-19, 2005-Ohio-2776, ¶ 35.

{¶ 56} As noted above, Hough's argument on appeal asserts that he received ineffective assistance of counsel based on counsel's failure to challenge Dr. Wyman's results and opinion testimony, which were reliant on retrograde, or reverse, extrapolation. Hough's basis for claiming that counsel was constitutionally deficient in this case is that counsel failed to file pretrial motions relative to Dr. Wyman's testimony. Hough argues his trial counsel "mistakenly believed that Wyman's alchemy was indeed a sound and accepted scientific technique," which Hough argues was in actuality "based on an unsound scientific process and should not have been introduced as evidence at his

trial." (Hough's Brief at 16-18.) Hough argues that had the testimony been challenged with evidence newly present on appeal, the counts requiring evidence of impairment would have been dismissed or the jury would not have found him guilty of those counts.

{¶ 57} The state responds that Hough fails to surmount the high bar required to prove ineffective assistance of counsel. Additionally, the state points to Hough's lack of evidence *within* the record on which he relies to claim ineffective assistance of counsel. Lastly, the state argues that even if trial counsel had challenged the admission of Dr. Wyman's evidence, it would have been futile because the evidence was admissible under *State v. Hassler*, 115 Ohio St.3d 322, 2007-Ohio-4947, and *State v. Curtis*, 10th Dist. No. 09AP-1199, 2011-Ohio-3298. The state argues that concerns about the accuracy of the test should go to weight and do not affect admissibility since the expert's opinion is subject to cross-examination and the witness was qualified as an expert. The state also argues the blood evidence was merely cumulative of other evidence of impairment and therefore the outcome of the trial would not have changed even if Hough had objected to the opinion testimony.

{¶ 58} "The failure to make either [the deficiency or prejudice] showing defeats a claim of ineffective assistance of counsel." *Kennard* at ¶ 14, citing *Bradley* at 143. Thus, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland* at 697.

{¶ 59} In this case, Hough makes general arguments that the alleged deficiency of trial counsel was based on counsel's failure to research the scientific method used by Dr. Wyman and prevent the introduction of Dr. Wyman's testimony through either a motion, objection, or some legal defense. Though, it is unclear which legal avenue Hough believes trial counsel should have pursued. Hough argues that "trial counsel filed no pretrial motions relative to Wyman's testimony." (Hough's Brief at 17.) However, on August 23, 2019, trial counsel did file a motion to suppress all evidence of tests and test results of Hough's blood draw on grounds that the blood was drawn by Columbus Police Department outside the three-hour time limit required by R.C. 4511.19(D)(1)(b).

Nevertheless, it is not necessary to determine whether Hough's counsel's performance was deficient because Hough has not shown his counsel's performance prejudiced him.

{¶ 60} In *Curtis*, this court, following the Supreme Court's precedent, determined blood draw evidence to be admissible in proving impaired driving, with respect to alcohol levels, even when the blood draw was taken outside the three-hour time limit. *See Curtis* at ¶ 30, citing *Hassler* at ¶ 2. In discussing the admissibility of such evidence, the court noted that drawing of the blood outside the time limit "does not diminish the probative value of the results in a prosecution for an 'impaired' violation." *Id.* at ¶ 31. Moreover, the court cited *Mason v. Murphy*, 123 Ohio App.3d 592, 597 (12th Dist.1997), for the proposition that the "test results are simply considered in addition to all other evidence demonstrating impaired driving." *Curtis* at ¶ 31.

{¶ 61} This court need not opine regarding whether the process of reverse extrapolation is sound scientific technique for measuring drug levels rather than alcohol levels and will not do so where no objection was made at the trial level and thus no record was made regarding the technique. We understand the issue raised by Hough to address Dr. Wyman's opinion testimony regarding the cocaine levels at the time of the accident, however, we recognize that the evidence of the blood draw has been ruled admissible outside of the three-hour limit with regard to alcohol levels in blood. *See Hassler* at ¶ 2. Therefore, *Curtis* compels at the very least, that the results of the blood draw test would be admissible. Because the results of the test were considered with all other evidence, taking into consideration the same, we find the introduction of the reverse extrapolation evidence was not prejudicial such that there does not exist a reasonable probability that, but for trial counsel's failure to object, the result of the proceeding would have been different.

{¶ 62} Furthermore, as was the case in *Hassler*, we note that Dr. Wyman's testimony was subject to cross-examination. Moreover, in addition to Dr. Wyman's testimony, the jury had before it other evidence of impairment presented by the state at trial, such as Cotter's testimony of an SUV driving erratically, Hough being the sole person found outside the Tahoe after the accident, and testimony of Officer Ward. Therefore, Hough was not prejudiced by the failure of trial counsel to raise some other motion,

objection, or legal defense. Having not demonstrated that counsel's performance prejudiced him, Hough's contention lacks merit.

{¶ 63} Accordingly, Hough's third assignment of error is overruled.

## IV. CONCLUSION

{¶ 64} Having overruled Hough's three assignments of error, we affirm the judgement of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____