# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3588

_____

United States of America

*Plaintiff - Appellee*

v.

Brian Scott Dahl, also known as Kodiak

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: September 10, 2015
Filed: November 30, 2015

_____

Before LOKEN, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Defendant Brian Scott Dahl appeals the district court's[1] denial of his motion seeking a psychological examination and competency hearing. We affirm the judgment of the district court.

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

I. Background

Pursuant to a plea agreement, Dahl pleaded guilty to one count of conspiring to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A). The conspiracy count carried a 120-month mandatory minimum sentence, and the firearm count carried a consecutive, 84-month mandatory minimum sentence.

At the change-of-plea hearing on October 16, 2013, the court and Dahl discussed his mental and physical health and personal history. During the discussion—and during the entire hearing—Dahl exhibited memory lapses. For example, he did not recall how far he had progressed in high school but he knew he had received a GED. Dahl confirmed to the court that the factual basis for the plea as set forth in the plea agreement was accurate. Dahl's attorney interjected that Dahl had difficulty remembering the quantities involved. Dahl then discussed with the court his sale of methamphetamine, including persons to whom he sold, locations, his sources, and the general time frames for transactions. He did not always recall precise details and quantities. He also claimed to have no recollection of an earlier, video-taped interview with police during which he confessed to selling large quantities. Dahl explained his poor memory was the product of both a traumatic brain injury (resulting from a 2007 truck accident) and oxycontin use (he claimed to have been high during the police interview). Dahl entered into the plea agreement with the hope and expectation that cooperation with the government would lead the government to file a substantial assistance motion pursuant to United States Sentencing Guidelines Manual § 5K1.1 and 18 U.S.C. § 3553(e), thus permitting a sentence below the otherwise-applicable seventeen-year statutory minimums.

Due to attempts at cooperation and motions by the parties, sentencing was delayed for approximately one year until November 3, 2014. As early as January

2014, however, it had become clear the government did not believe the information Dahl provided was useful and a substantial assistance motion would be unlikely. On September 4, 2014, Dahl filed a pro se letter seeking appointment of new counsel. His hand-written letter, dated August 18, 2014, attacked counsel's performance and complained about a lack of access to counsel and materials. The court denied his request, finding the motion untimely and also finding access to certain materials unnecessary because Dahl had already pleaded guilty and only his sentencing remained. On October 20, 2014, Dahl filed another pro se letter which the court interpreted as a motion to reconsider the initial ruling denying the request for new counsel. In the second letter, Dahl again complained about a lack of access to his attorney and indicated a sense of urgency, noting, "I am 2 weeks away from sentencing. I have many legal questions. I've been left completely in the dark. And I have been threatened with what amounts to a life sentence." Dahl's second letter stated he wanted a mental evaluation by a neuropsychologist in North Dakota but his attorney would not schedule an evaluation. The court denied the motion to reconsider.

Also on October 20, 2014, more than one year after Dahl's plea hearing and after attempts at cooperation did not result in a departure motion, Dahl's attorney filed three separate motions: a motion for a psychological examination and competency hearing; a motion to withdraw Dahl's guilty plea alleging incompetency at the time of the plea hearing; and a motion to compel the government to file a substantial-assistance motion. The court denied the motion to withdraw in a written order, stating its belief that, based on record presented (including the plea colloquy and medical records), Dahl had been competent at the time he entered his plea.

At the November 3, 2014 sentencing hearing, the court denied the motion to compel a substantial assistance motion, holding the court lacked authority to compel such a motion in the absence of a showing that the government acted in bad faith or with an unconstitutional motive. The court then orally addressed the motion for a

competency hearing and examination, finding no reasonable basis to believe Dahl was incompetent and denying the motion. The court reiterated its observations from the plea hearing and stated emphatically the view that Dahl had been competent at that time. The court also indicated concerns with Dahl's credibility surrounding his physical and mental limitations. In this regard, the court noted that it had asked the coconspirators about Dahl's mental and physical capabilities, and the coconspirators did not report witnessing deficiencies. The court also indicated that Dahl had represented at the plea hearing that he suffered substantial physical limitations, but the court later saw a video of Dahl taken while Dahl was detained between the plea hearing and the sentencing hearing. In the video, Dahl "move[d] in a rather quick and agile manner to rush over and strike some other inmate."

The court imposed the mandatory minimum 204-month (seventeen-year) sentence. Dahl became irate at the government's refusal to move for a cooperation-based departure, the court's refusal to order such a motion, and the ultimate sentence imposed. Dahl yelled at the court, the government's attorney, and the marshals. Dahl was upset because he believed he had debriefed truthfully in an attempt at cooperation and was receiving no benefit whereas his coconspirators had lied and received greater benefits.

Dahl also was angry regarding the interpretation of an incident described in his presentence investigation report (PSR) regarding his uncharged involvement in the kidnaping, detention, and assault of a coconspirator. According to the PSR, Dahl's coconspirators kidnaped a fellow conspirator, beat him (resulting in a broken rib), and struck him in the face with a gun before tying him to a chair and leaving him for several hours. One member of the group later returned with Dahl, and the two men repeatedly tased the victim. Dahl pointed a gun at the victim's head while another coconspirator sharpened a bladed weapon. Dahl then shoved a bandana into the victim's mouth with sufficient force to cause the victim's jaw to "pop." Dahl then threatened to kill him, and, at Dahl's instruction, another coconspirator struck the

victim's outstretched hand directly with a hammer. The group then locked the victim in a cellar where they kept him for as long as two days and repeatedly injected him with methamphetamine. Eventually the group released the victim, threatening him and his family with future harm if he went to the police. Dahl characterized his participation in the event as an attempt to save the victim's life. According to Dahl, the other conspirators would have killed the victim and Dahl had to play along and act like he was in control of the situation to save the victim. Dahl had similarly asserted at his plea hearing that his involvement in the kidnaping and assault had saved the victim's life.

On appeal, Dahl challenges only the denial of his motion for a competency hearing and examination. He challenges neither the denial of his motion to withdraw his plea nor the denial of his motion to compel a substantial assistance motion. In arguing the district court should have ordered an examination and hearing, Dahl cites medical reports predating his plea hearing, his testimony at the plea hearing, and his own statements and outbursts at sentencing. In addition, Dahl relies upon the arguments of his attorney who asserts Dahl's mental condition deteriorated between the plea hearing and sentencing hearing.

Medical evidence showed Dahl suffered physical injuries when he crashed his vehicle into a logging truck in 2007. He had several surgeries to address injuries from the accident, and medical reports diagnosed him with "mild cognitive impairment." In a 2008 disability assessment generated for insurance purposes, the reviewing physician, Dr. Annette Weller, provided an opinion based on personal observations and findings reported by other physicians. Dr. Weller described Dahl as cooperative and pleasant in her own interactions. She summarized records from a 2007 neuropsychiatric exam, stating, "Areas of relative weakness were noted in overall auditory attention, speed of information processing, verbal fluency, and confrontation naming. The DSM-IV diagnosis provided was cognitive disorder, not otherwise specified. Cognitive rehabilitation was suggested." Dr. Weller recounted

her own observations from a July 2007 exam noting "mild traumatic brain injury" with "disconjugate gaze" and recommending "further evaluation by a neurooptometrist." She also reported her observations from a November 2007 evaluation:

> [f]or cognitive impairment related to the mild head injury, Mr. Dahl was working with speech therapy. He reports that he completed speech therapy last week. He reports that he continues to have problems with short-term memory. For example, he reports that when he is doing mechanic type work, taking something apart, he forgets how to put it back together. He describes slow processing. He relies heavily on a Day Planner. In addition, [he] reports occasional word finding problems. *He is not impaired from routine activities of daily living, as well [as] higher tasks, with hope of returning to regular work activity.* (Emphasis added)

Ultimately, Dr. Weller rated Dahl's cognitive impairment as a "5% whole person impairment related to patient's problems with short-term memory and attention, increased reliance on Day Planner and notes."

Finally, Dahl's attorney argued that, based on his personal interactions with Dahl, Dahl's mental state had deteriorated in the year between the plea hearing and the sentencing hearing. The attorney, however, did not opine that Dahl was unable to understand the nature or consequences of the proceedings. He also did not assert Dahl was unable to assist in the defense. At sentencing, Dahl's attorney read a letter from Dahl's sister who described the effects of Dahl's brain injury as anger issues and short-term memory issues.

## II. Discussion

> A defendant must be competent at all stages of the prosecution, including sentencing. A defendant is competent to stand trial or face

sentencing if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.

United States v. Casteel, 717 F.3d 635, 641 (8th Cir. 2013) (citations omitted). Mental illness and cognitive impairment are not synonymous with incompetence, however, and "a mental deficiency or . . . bizarre, volatile, and irrational behavior does not necessarily make [a defendant] incompetent to stand trial." United States v. Ghane, 593 F.3d 775, 779 (8th Cir. 2010) (citations omitted).

Because "competency is not static and may change over even a short period of time," Casteel, 717 F.3d at 641, parties may move for a competency determination at any stage of the prosecution. And, a district court "'shall order' a competency hearing upon its own motion if 'there is reasonable cause to believe' a defendant is not competent and . . . 'may order' a psychological evaluation prior to such a hearing." United States v. Washington, 596 F.3d 926, 940 (8th Cir. 2010) (quoting 18 U.S.C. § 4241 (a)-(b)). We review the district court's denial of a motion for a competency hearing and examination for abuse of discretion. Id.; United States v. Crawford, 487 F.3d 1101, 1105 (8th Cir. 2007).

Here, we find no abuse of the district court's discretion because we agree with the district court there was no "reasonable cause" to believe Dahl was incompetent. The medical reports indicated physical injury including a brain injury that resulted in "mild cognitive impairment." It is undisputed Dahl suffered memory lapses, but the medical reports provided no indication Dahl was incapable of understanding the nature or consequences of the legal proceedings. Importantly, Dahl's extensive participation at his hearings showed he understood the nature and consequences of the proceedings.

After the government made clear that it did not intend to move for a substantial assistance departure, Dahl provided two pro-se letters to the court showing a reasonable understanding of the consequences of the proceedings against him. Dahl was a fifty-one-year-old man who was facing a possible life sentence and, without a substantial assistance motion from the government, a mandatory minimum sentence of seventeen years' imprisonment (which, given his circumstances, he not unreasonably characterized as a life sentence in practical effect). Dahl emphasized his sense of urgency to the court and demonstrated not only an understanding of his potential sentence, but also of the role a competency determination would play in his case. He complained generally about an absence of communication from his attorney and specifically about his attorney's failure to secure a psychological or psychiatric examination.

At the sentencing hearing itself, Dahl again demonstrated his ability to understand the nature and consequences of the proceedings. Dahl had entered into his plea agreement hoping to receive a substantial assistance motion from the government that would allow the court to sentence him below the otherwise applicable seventeen-year mandatory minimum sentence. Dahl recalled with detail events surrounding the incident during which he abused the detained conspirator and pointed a gun at the man while tied to a chair. Dahl believed it unjust that other conspirators received lesser sentences and believed they had lied to the court in order to obtain such sentences. Dahl's outbursts in the courtroom displayed anger and a lack of decorum; they were ill-advised but not irrational. Rather, Dahl's anger at not receiving the substantial assistance motion reflected a rational understanding of the nature of the sentencing regime, the consequences of the proceedings, and the role of a government motion.

And finally, counsel's representations and arguments assert merely that Dahl's mental condition had deteriorated between the plea hearing and sentencing hearing. Counsel did not represent that the nature of Dahl's "mild cognitive impairment" had

changed or that Dahl had become unable to understand the proceedings and assist counsel. Simply put, not every mental impairment relates to competency, and the record shows that, despite memory difficulties, Dahl understood the proceedings. United States v. Knohl, 379 F.2d 427, 436 (2d Cir. 1967) ("Where the defendant complains of nothing more than memory difficulties, there is inadequate ground for holding an accused incompetent to stand trial."). We believe the district court properly concluded that Dahl was competent for sentencing and that he was unsatisfied with the outcome.

III. Conclusion

Because the district court did not abuse its discretion in denying a competency hearing and examination, we affirm the judgment of the district court.

_____