[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hough*, Slip Opinion No. 2022-Ohio-4436.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4436

THE STATE OF OHIO, APPELLEE, *v.* HOUGH, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hough*, Slip Opinion No. 2022-Ohio-4436.]**

*Criminal law—R.C. 2945.37—R.C. 2945.37(B) requires a court to conduct a hearing when the issue of the defendant's competency is raised before trial—Court of appeals' judgment reversed, defendant's convictions vacated, and cause remanded.*

(No. 2021-0998—Submitted April 26, 2022—Decided December 13, 2022.)

APPEAL from the Court of Appeals for Franklin County,

No. 19AP-682, 2021-Ohio-2198.

_____

**BRUNNER, J., announcing the judgment of the court.**

{¶ 1} In this case, we consider whether the trial court's failure to hold a competency hearing after one was requested by the defendant's counsel prior to trial constituted harmless error. We conclude that the trial court's error was not

harmless.   We therefore reverse the judgment of the Tenth District Court of Appeals.

## I.  Background

### *A.  Trial-court proceedings*

**{¶ 2}** On August 8, 2017, defendant-appellant, Richard Hough, drove his vehicle the wrong way on a highway exit ramp and struck a car carrying four people.  The driver of the car was killed; the three passengers were injured.  A police officer obtained a warrant to draw Hough's blood to test for intoxicating substances.  The results of the test showed that Hough had cocaine and marijuana metabolites in his system.

**{¶ 3}** On November 7, 2017, Hough was named in a 12-count indictment. Counts 1 and 2 charged him with aggravated vehicular homicide under R.C. 2903.06.  Counts 3, 5, and 7 charged him with aggravated vehicular assault under R.C. 2903.08.  Counts 4, 6, and 8 charged him with vehicular assault under R.C. 2903.08.  Count 9 charged him with operating a vehicle under the influence of a drug of abuse under R.C. 4511.19.  Counts 10, 11, and 12 charged him with additional violations of R.C. 4511.19 for operating a vehicle while under the influence of cocaine and marijuana.  Hough pleaded not guilty on December 1, 2017.  He was released on bond on December 19, 2017.  Proceedings in his case were then continued 11 separate times.

**{¶ 4}** On April 12, 2019, Hough's counsel filed a motion for a competency evaluation of Hough under R.C. 2945.37.  The motion was one sentence long and stated as follows:

> Facts having come to defense counsel's attention pertaining to the Defendant's psychiatric state, the Defendant, through counsel moves the Court pursuant to Section 2945.37 to have the Defendant

> referred to the Netcare Forensic Psychiatry Center for examination
> as to the Defendant's present mental condition.

That same day, Hough's counsel filed a motion for a psychiatric evaluation of Hough. That motion was identical to the motion for a competency evaluation, except that instead of requesting an examination of Hough's *present* mental condition, it requested an examination of his "mental condition at the time of the offense."

{¶ 5} Six days later, on April 18, 2019, the trial court denied the motion for a psychiatric evaluation on the ground that it was untimely. It observed that Hough had entered a general plea of not guilty, not a plea of not guilty by reason of insanity, and cited Crim.R. 11(H), which provides that a plea of not guilty by reason of insanity "must be pleaded at the time of arraignment, except that the court for good cause shown shall permit such a plea to be entered at any time before trial." Here, Hough's request for an examination of his mental condition at the time of the offense was made over 16 months after he pleaded not guilty and less than 60 days before the then-scheduled date of his trial. He submitted no evidence that he was insane at the time of the offense. The trial court did not address the motion for a competency evaluation.

{¶ 6} Hough's trial began on August 26, 2019, and lasted four days. The court dismissed Counts 10, 11, and 12 before the jury began deliberations. On August 29, 2019, he was found guilty on Counts 1 through 9—both aggravated-vehicular-homicide charges, all three aggravated-vehicular-assault charges, all three vehicular-assault charges, and the charge for operating a vehicle while under the influence of a drug of abuse. After the jury's verdict was announced, Hough's counsel requested a psychiatric evaluation of Hough for the purpose of preparing a sentencing mitigation report. The court granted the request.

{¶ 7} The psychiatric evaluation was conducted by Dr. A.J. McConnell and the report he prepared was filed on September 11, 2019.[1] Dr. McConnell reviewed Hough's social, medical, and criminal background, including medical-treatment records. He noted that Hough had been diagnosed in the past with schizophrenia, bipolar disorder, and major depressive disorder. Hough's medical records also indicated that he had struggled to take the medications prescribed for these conditions. He also had been hospitalized several times for psychiatric purposes. One of those hospitalizations occurred less than two weeks before the crimes in this case. On that occasion, Hough was found by police lying in the street. When they took him to the hospital, he stated that someone had been chasing him and that someone was in the trees.

{¶ 8} The report also included an evaluation of Hough's mental status at the time of the examination. Among other things, Dr. McConnell observed that Hough "was not able to provide [him] with the day of the week, date, month, or year, but recognized that he was in jail and had an upcoming court hearing. He understood that he was participating in an evaluation per the request of his defense counsel and the Court." Hough also held several delusional beliefs, such as the beliefs that others could control his thoughts or force thoughts into his head and that people were trying to follow him and cause him problems. And Hough stated that he was having auditory hallucinations during the evaluation. On this point, Dr. McConnell believed that Hough was responding to internal stimuli, not external noises.

{¶ 9} Dr. McConnell then discussed the results of several psychological tests. He administered a test that measures intellectual functioning, the Wechsler Abbreviated Scale of Intelligence, Second Edition. The results indicated that

---

1. Dr. McConnell's psychiatric report is sealed. Hough's argument concerning his competency refers to numerous details of this psychiatric report. We have reviewed the sealed psychiatric report and we find it sufficient to base our conclusions here on information in that report that has already been revealed publicly, either in Hough's brief or in the decision of the court of appeals.

Hough has a full-scale IQ of 59, "which is within the extremely low range and is the same or greater than only 0.3 [percent] of his same-aged peers." Hough's score on the verbal-comprehension index, which assesses verbal concept formation and verbal reasoning, was equal to or above those of only 0.4 percent of his same-aged peers. Hough also took a memory test. His performance in the immediate-memory category was average, but his performance in every other category—including auditory memory, visual memory, visual working memory, and delayed memory—was below average.

{¶ 10} Hough's sentencing hearing occurred on September 12, 2019, one day after Dr. McConnell's report was filed. After merging several counts, the court sentenced him to six years in prison on Count 1 and three years in prison on each of Counts 3, 5, and 7. It also ordered that all four of these sentences be served consecutively. The trial court then imposed a concurrent prison sentence of six months on Count 9. Hough received an aggregate sentence of 15 years in prison.

### B. Appellate-court decision

{¶ 11} The appellate court affirmed. Relevant here, it rejected Hough's argument that a new trial was warranted because of the trial court's failure to conduct a hearing on Hough's motion for a competency evaluation.

{¶ 12} The appellate court began by reviewing the relevant law. R.C. 2945.37(B) requires a court to conduct a hearing when the issue of the defendant's competency is raised before trial. The statute provides:

> In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section.

R.C. 2945.37(B). But a failure to hold a hearing under this statute may be harmless error. In *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986), we held that a court's failure to hold a competency hearing under R.C. 2945.37 "is harmless error where the record fails to reveal sufficient indicia of incompetency."

{¶ 13} The appellate court then proceeded directly to a harmless-error analysis. It reviewed two cases in which the harmless-error standard had been applied, starting with *Bock*. In that case, while the defendant was in the hospital after a drug overdose, his counsel requested a competency hearing. *Id.* The trial court responded by ordering that the defendant's competency be examined, but a competency report was never filed and a hearing was never held. *Id.* The court of appeals in *Bock* held that the trial court's failure to hold a hearing was reversible error, but on appeal, this court reversed in relevant part, concluding that while the trial court had erred by failing to hold a hearing, the error was harmless. We looked to the defendant's testimony at trial, which was extensive. *Id.* at 111. Although the defendant testified about "his emotional distress and [made] comments about suicide," this court stated that that "alone is not sufficient to indicate a lack of competency." *Id.* at 110. And in the remainder of his testimony, he exhibited "no apparent behavior" that suggested incompetency. *Id.* at 111. The defendant's counsel also did not raise the issue of his competency again until his case was on appeal. *Id.* Based on those facts, we concluded that "the record reveals no adequate indication of any behavior on the part of the defendant which might indicate incompetency." *Id.* The trial court's failure to hold a competency hearing in *Bock* was therefore harmless error. *Id.*

{¶ 14} In *State v. Were*, 94 Ohio St.3d 173, 761 N.E.2d 591 (2002), by contrast, the defendant's counsel had raised the issue of the defendant's competency on numerous occasions—through a motion before trial, after opening arguments, during trial, and before mitigation. *Id.* at 175. The defendant's exhibiting signs of paranoia and refusing to cooperate led his attorneys to file two

motions to withdraw as counsel and a motion for a continuance. *Id.* at 176. His attorneys also informed the trial court that the defendant refused to speak with his defense team, and they consistently claimed that his "failure to cooperate seriously hampered their ability to present a defense." *Id.* The defendant had filed numerous pro se motions to dismiss his attorneys in which he accused them of threatening his life and conspiring with the prosecution. *Id.* We found that the record was "replete with suggestions of [the defendant's] incompetency." *Id.* at 175. The trial court's failure to hold a competency hearing in *Were* was therefore not harmless. *See id.* at 177.

{¶ 15} The appellate court also reviewed two cases involving constitutional claims based on a defense counsel's failure to request or a trial court's failure to hold a competency hearing. In *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, the defendant argued that his attorneys had provided ineffective assistance by failing to request a competency hearing. *Id.* at ¶ 113. During the trial in *Braden*, a psychologist testified that the defendant believed that he would not be tried because God would deliver him and noted that the defendant was becoming more distrustful and dismissive of his lawyers. *Id.* We held that the attorneys' performance was not deficient, however, because the attorneys "were alert to the possibility of [the defendant's] incompetence," *id.* at ¶ 115. They had the psychologist examine the defendant on three occasions in the months leading up to the trial, and each time, the psychologist found the defendant was competent. *Id.* We also observed that the defendant's diagnosis of paranoid schizophrenia was "not synonymous with incompetence to stand trial." *Id.* at ¶ 116. Finally, we noted that "the record reflects no behavior by [the defendant] during trial that would suggest the lack of legal competency." *Id.* at ¶ 117. The defendant had "answered the trial court's questions about visits from [the psychologist], expressed satisfaction with his counsel, told the judge he understood his appellate rights, said

he did not want a presentence investigation and informed the court that he did not wish to make a statement prior to sentencing." *Id.*

{¶ 16} In *State v. Prophet*, 10th Dist. Franklin No. 14AP-875, 2015-Ohio-4997, the Tenth District Court of Appeals considered whether the defendant's right to due process was violated when the trial court did not order a competency hearing sua sponte. *Id.* at ¶ 10. The court concluded there was no constitutional violation, based in part on the plea colloquy between the defendant and the trial court in which the defendant expressly stated, among other things, that he understood the nature of the charge against him and had discussed the case with counsel, and in part on the fact that the defendant's counsel had represented him for a year and had not raised an issue regarding his competency. *Id.* at ¶ 19, 26.

{¶ 17} The appellate court then turned to the record in the present case. It concluded that *Were*, 94 Ohio St.3d 173, 761 N.E.2d 591, was distinguishable because Hough's counsel did not raise the competency issue repeatedly and Hough himself did not take actions like the defendant in *Were*, such as filing pro se motions to dismiss his counsel, that might lead a court to question his competency. Hough's case therefore was "not replete with indicia of incompetency" like the facts in *Were*. 2021-Ohio-2198 at ¶ 46.

{¶ 18} The court of appeals then concluded that Dr. McConnell's psychiatric evaluation did not provide sufficient indicia of incompetency. Although the report shows that Hough suffers from mental illness and has limited intellectual abilities and cognitive functioning, the court of appeals relied on the cases discussed above to conclude that suffering from mental illness alone is not sufficient for a finding of legal incompetency. The court also reasoned that the evaluation provided some indication that Hough *did* understand the proceedings against him. In the end, the appellate court believed Hough was more similar to the defendants in *Bock*, *Braden*, and *Prophet*, all of whom had a mental illness but, the evidence showed, were nonetheless competent to stand trial. To the extent the

trial courts in those cases had more interaction with the defendants than the trial court here had with Hough, the appellate court believed this distinction did not matter, because R.C. 2945.37(G) requires the court to presume a defendant is competent unless he is shown to be incompetent.

{¶ 19} The appellate court concluded by stating that the trial court had erred by not holding a hearing in response to Hough's motion for a competency evaluation. But based on its analysis, it held that that error was harmless because "the record lacks sufficient indicia of incompetency," 2021-Ohio-2198 at ¶ 49.

{¶ 20} Hough filed a notice of appeal with this court seeking review of three propositions of law. We accepted jurisdiction over the second proposition. *See* 164 Ohio St.3d 1456, 2021-Ohio-3438, 174 N.E.3d 803. The accepted proposition is: "The trial court erred to the prejudice of appellant by not conducting a hearing on his Motion for Competency Evaluation."

## II. Analysis

{¶ 21} "It has long been recognized that 'a person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.' " (Brackets added in *Smith*.) *State v. Smith*, 89 Ohio St.3d 323, 329, 731 N.E.2d 645 (2000), quoting *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). "Fundamental principles of due process require that a criminal defendant who is legally incompetent may not be tried." *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 36. Whether a defendant is competent depends on whether he " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 45, quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

**{¶ 22}** R.C. 2945.37 addresses a defendant's competency to stand trial. "A defendant is presumed to be competent to stand trial." R.C. 2945.37(G). It also sets a standard for competency that matches the constitutional rule set forth in the caselaw. A court shall find that a defendant is incompetent to stand trial "[i]f, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense." *Id.* When a defendant is found incompetent, the court then proceeds under R.C. 2945.38, which sets out various paths forward based on factors such as the nature of the crime the defendant is charged with and the likelihood that the defendant will regain competency within a certain amount of time. *See id.*

**{¶ 23}** Relevant here is the provision addressing the initiation of an inquiry into a defendant's competency to stand trial. R.C. 2945.37(B) provides as follows:

> In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. *If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section.* If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

(Emphasis added.) The hearing is mandatory: "a trial court must hold a competency hearing if a request is made before trial." *Were*, 94 Ohio St.3d 173, 761 N.E.2d 591, at paragraph one of the syllabus; *see also State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 64 (stating that "R.C. 2945.37 requires a

competency hearing if a request is made before trial," but that if a request is made after a trial has started, whether to hold a hearing is within the trial court's discretion). If the issue of the defendant's competency is raised, the trial court can order an evaluation of the defendant by a psychiatrist or a licensed clinical psychologist, who is required to file a report addressing certain specified topics with the court under seal. R.C. 2945.37(A)(2); R.C. 2945.371(A), (H).

{¶ 24} The initial question we must answer is whether R.C. 2945.37(B) required the trial court to hold a hearing in response to Hough's pretrial motion for a competency evaluation. We agree with the appellate court that R.C. 2945.37(B) required a hearing. The statute is clear that a hearing is mandatory when "the issue is raised before the trial." Here, Hough's counsel raised the issue directly through a motion. The motion also made the trial court aware that it was based on "[f]acts having come to defense counsel's attention pertaining to the Defendant's psychiatric state." Revealing in a motion for a competency evaluation the facts supporting the request may be the better practice, but the statute does not require that the issue of a defendant's competency be raised in a particular way or that any motion include facts rising to a particular degree of proof. It requires only that the issue be "raised"—so that facts may be gathered and evaluated at a subsequent hearing. In some cases, revealing the factual basis for competency concerns in a public filing could require the disclosure of discussions protected by the attorney-client privilege or information protected by medical-privacy laws. To protect the defendant's interests, it may be better not to reveal certain matters publicly unless and until a formal competency hearing is held.

{¶ 25} The state raises the concern that under this interpretation, R.C. 2945.37(B) could be used to cause delay by the defendant's filing such a motion on the eve of trial. That concern fails to compel a different conclusion in this case for two reasons. First, it overlooks the fact that an attorney's ethical obligations require that any motion the attorney files have a good-faith basis in both law and fact. *See*

Prof.Cond.R. 3.1 ("A lawyer shall not * * * assert or controvert an issue in a proceeding, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law"). Any attempt to use R.C. 2945.37(B) for undue delay runs the risk of being exposed as baseless at the hearing. Second, less than a week before the trial court denied Hough's motion for a psychiatric evaluation on April 18, 2019, it had granted a nearly two-month continuance—until June 3, 2019—based on a *joint* request by the parties for additional time for trial preparation and continuing plea negotiations. R.C. 2945.37(C) requires that a competency hearing be held either within 30 days of the issue being raised or, if the court orders an evaluation of the defendant under R.C. 2945.371, within 10 days after the report based on the evaluation is filed. We have no reason to believe that those requirements could not have been met between April 12, 2019—the day the motion for a competency evaluation was filed—and the June 3, 2019 trial date that had been set when the continuance was granted on April 8.

{¶ 26} The issue at the heart of this case is whether the trial court's error was harmless. Hough argues that *Bock* sets too high of a standard and therefore does not sufficiently protect a defendant's right not to be tried when incompetent. He also claims that the appellate court here effectively set an even higher standard than what *Bock* provides, one that permits a finding of harmless error unless the record is "replete with indicia of incompetency." Overall, he claims *Bock* and cases applying it set a standard that is effectively insurmountable, as the hearing required by R.C. 2945.37(B) and the associated psychological examination in advance of the hearing, *see* R.C. 2945.371, are the way to create a record concerning incompetency. Finally, Hough contends that the appellate court failed to give proper weight to the evidence of his incompetency in the record and found evidence to the contrary where there was none.

**{¶ 27}** The state argues in response that the standard set forth in *Bock* is proper and was correctly applied in this case. In particular, the state defends the appellate court's statement that the record here is "not replete with indicia of incompetency," 2021-Ohio-2198 at ¶ 46, by arguing that the appellate court simply used that phrase to distinguish the facts in this case from those in *Were*, 94 Ohio St.3d 173, 761 N.E.2d 591, and that the statement did not amount to a new, heightened standard for determining harmless error. And the state argues that the appellate court otherwise properly applied the *Bock* standard in this case, because, according to the state, the record in this case does not contain sufficient indicia of incompetency. The state notes that the motion for a competency evaluation did not identify any facts indicating Hough's incompetency, Hough had never been found incompetent in prior criminal cases, and the psychiatric evaluation conducted before sentencing indicated he understood the purpose of the evaluation.

**{¶ 28}** In our view, the standard set forth in *Bock* is proper and sufficiently protects a defendant's right not to be tried when incompetent. In *Bock*, we noted that whether a trial court's failure to hold a competency hearing is reversible error is to be determined on a case-by-case basis. *See Bock*, 28 Ohio St.3d at 109-110, 502 N.E.2d 1016. And in *Bock*, the court's holding was based on the facts of that case, which involved a defendant who substantially participated in the trial and therefore provided a much greater opportunity for potential indicators of incompetency to be displayed on the record. We concluded in the syllabus: "The failure to hold a competency hearing is harmless error *where the defendant proceeds to participate in the trial, offers his own testimony in defense and is subject to cross-examination,* and the record fails to reveal sufficient indicia of incompetency." (Emphasis added.) *Id.* at paragraph one of the syllabus.

**{¶ 29}** Here, Hough's interactions with the trial court were far fewer and by their nature less likely to reveal potential indicators of incompetency than the interactions involved in *Bock*. Hough did not testify and was therefore not subject

to cross-examination. He made no statements at trial or at sentencing, and the trial court addressed him only twice—once at trial to advise him of his Fifth Amendment rights and once at the end of sentencing to wish him luck. Given those limited interactions, the transcripts of the trial-court proceedings here are far less informative as direct evidence of Hough's demeanor and behavior as compared to the record in *Bock*. And regardless, a defendant's in-court demeanor does not permit a trial court to dispense with a competency hearing when one is otherwise required. *See Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Drope*, 420 U.S. at 179, 95 S.Ct. 896, 43 L.Ed.2d 103.

{¶ 30} The appellate court improperly discounted the indicia of Hough's incompetency in the record. For example, it was dismissive of Hough's mental-health diagnoses, stating that "mental illness alone is not necessarily sufficient for a finding of legal incompetence," 2021-Ohio-2198 at ¶ 47. No one has argued that Hough's mental-health diagnoses *alone* warranted an incompetency finding. But those diagnoses are relevant and should be considered with any *other* evidence that may indicate incompetency.

{¶ 31} The appellate court also relied on the fact that according to Dr. McConnell's report, Hough understood that he was in jail, had been charged with vehicular homicide, had an upcoming hearing, and was being examined at the request of his counsel. It likewise relied on the fact that Hough's counsel stated that he had shown remorse and taken responsibility for his actions, which the appellate court believed "suggests he has an appreciation for the nature of the charges," *id.* at ¶ 49. But the question under *Bock* is not whether there are any indicia of *competency*. The question is whether there are sufficient indicia of *incompetency*.

{¶ 32} There exist numerous indicia of Hough's incompetency in the record. First, in the portion of the report in which Dr. McConnell observed that Hough understood that he was in jail and that he was being examined for an

14

upcoming hearing in this case, Dr. McConnell also observed that Hough "was not able to provide [him] with the day of the week, date, month, or year" and that Hough held several delusional beliefs, such as the belief that others could control his thoughts or force thoughts into his head and that people were trying to follow him and cause him problems. Hough stated he was having auditory hallucinations during the evaluation. On this point, Dr. McConnell believed that Hough was responding to internal stimuli, not external noises.

{¶ 33} Cognitive tests revealed important indicia of Hough's incompetency, with the test scores indicating that Hough has a full-scale IQ of 59, "which is within the extremely low range and is the same or greater than only 0.3 [percent] of his same-aged peers." He similarly scored within the first percentile on a test component assessing his abilities in verbal concept formation and verbal and nonverbal reasoning.

{¶ 34} In his final conclusions, Dr. McConnell stated that "regardless of the contributing factors or cause of [Hough's] limited intellectual and cognitive abilities, his abilities are still within the extremely low range and are equivalent to the intellectual/cognitive abilities of an individual with an Intellectual Disability." Overall, Dr. McConnell summarized his conclusions as follows:

> Mr. Hough is an individual with a severe mental illness and intellectual/cognitive deficits. * * * He has attempted to engage in mental health treatment over the past few years but has struggled maintaining compliance with treatment. This could be associated with his poor insight, limited intellectual/cognitive functioning, and/or the nature of the symptoms associated with his DSM-5 diagnoses.

**{¶ 35}** Additionally, Hough's counsel raised concerns about Hough's competency at sentencing:

[HOUGH'S COUNSEL:] He has some very real diagnoses. He has shown over the course of this case tendencies to lose focus. *Sometimes he responds to external stimuli to where it made me wonder whether or not he was competent. I tried to pull all the medical records that I could to get the background on whether or not he was competent.* * * *

Please understand that competency and the other diagnoses that he has may seem like an excuse, but they're very real when it comes to a criminal case. *If he is hearing voices and does not know who he is and he thinks God is speaking to him, that goes to the heart of whether or not he can stand and/or sit in front of a Court and actually be helpful in his defense.*

I did bring up to the Court my concerns about his competency. I filed a request to have his competency reviewed, and it was denied.

THE COURT: Yeah, two years into the case, so don't even get me started on that, okay? If you want to get started on that, I'm happy to get started on that, because you had two years to do that.

[HOUGH'S COUNSEL]: I am not getting into that. I am simply making a record that one was made, and it was denied. Competency is very fluid. You can be competent one moment, and two years later you may not be competent. I can't file for competency before I see a reason to do so. He has not failed to take responsibility for this. He has shown incredible remorse for what has happened.

(Emphasis added.) These statements are consistent with statements in Dr. McConnell's report, and they are a clear indication—from someone who worked with Hough in person—that he may not be competent.

{¶ 36} Finally, the fact that Hough's counsel did not file additional motions for a competency hearing does not weigh in favor of finding harmless error. While repeated requests may support the conclusion that a defendant is *incompetent*, *see Were*, 94 Ohio St.3d at 175, 761 N.E.2d 591, the *absence* of repeated requests does not indicate the opposite—that a defendant must be *competent*. We likewise do not believe that the fact that the case had been continued numerous times should dictate whether a competency hearing was needed. Nine of the eleven continuances in this case were granted based on requests made jointly by the parties. Of the remaining two, one was requested by Hough based on the unavailability of his counsel and the other was requested by the state based on the unavailability of one of its witnesses.

{¶ 37} Overall, Dr. McConnell's report and the statements of Hough's counsel at sentencing reflect significant indicia of Hough's incompetency. The hearing required by R.C. 2945.37(B) and the associated psychological examination in advance of the hearing, *see* R.C. 2945.37(A)(2) and (C); R.C. 2945.371(A), would have facilitated a proper consideration of whether Hough was competent. " 'Common sense dictates that no defendant can make a record of lack of competency absent the findings and hearings contemplated by R.C. 2945.37 and 2945.371.' " *Were* at 177, quoting *Bock*, 28 Ohio St.3d at 113, 502 N.E.2d 1016 (Wright, J., dissenting). We therefore conclude that the appellate court erred by concluding that the trial court's failure to hold such a hearing was harmless error.

{¶ 38} That leaves only the remedy. Hough argues that precedents from this court and the United States Supreme Court require that his convictions be vacated and this case remanded to the trial court, where the issue of his competency

can be raised and addressed before a new trial may occur. The state argues for a limited remand during which Hough's convictions would remain in effect while the trial court conducts an inquiry into whether he was competent at the time he was tried.

{¶ 39} Hough is correct. In *Were*, after we concluded that the trial court's failure to hold a competency hearing was not harmless error, we vacated the defendant's convictions and remanded the matter for a new trial. 94 Ohio St.3d at 177, 761 N.E.2d 591. The United States Supreme Court has taken the same approach in this context. *See Pate*, 383 U.S. at 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (remanding for new trial). Although the state points to prior cases in which the courts ordered the type of limited remand the state seeks, those cases involved other contexts and the courts did not order a limited remand based on a failure to hold a competency hearing when one was required. *See, e.g.*, *State v. Tuck*, 80 Ohio App.3d 721, 725, 610 N.E.2d 591 (10th Dist.1992) (ordering limited remand to determine whether there had been error in jury selection); *State v. Brown*, 2d Dist. Montgomery No. 24297, 2012-Ohio-195, ¶ 12 (ordering limited remand to determine whether there had been error concerning suppression of evidence). The United States Supreme Court has also rejected the propriety of a limited remand in the competency-determination context. *See Pate* at 387 (noting "the difficulty of retrospectively determining an accused's competence to stand trial" and the "need for concurrent determination" of competency); *Drope*, 420 U.S. at 183, 95 S.Ct. 896, 43 L.Ed.2d 103 ("The question remains whether petitioner's due process rights would be adequately protected by remanding the case now for a psychiatric examination aimed at establishing whether petitioner was in fact competent to stand trial in 1969. Given the inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances, * * * we cannot conclude that such a procedure would be adequate here. * * * The State is free to retry petitioner, assuming, of course, that at the time of such trial he is competent to be tried").

**{¶ 40}** The opinion concurring in part and dissenting in part would not vacate Hough's convictions but would remand this case for the trial court to attempt to determine whether Hough was competent at the time of his trial in August 2019. It contends that we and the United States Supreme Court "fail to recognize" that determining whether a defendant was competent in the past "is no more difficult" than a court's analyzing a defendant's claim of not guilty by reason of insanity ("NGRI"). Opinion concurring in part and dissenting in part, ¶ 47. The problem with this approach is that the statutory definition of NGRI is focused on the defendant's mental state "at the time of the commission of the offense," R.C. 2901.01(A)(14), while the statutory definition of competency to stand trial is focused on "the defendant's present mental condition," R.C. 2945.37(G)—meaning the mental condition of the defendant at the time of trial. A retrospective inquiry is therefore the only option when considering an NGRI claim, and undertaking that inquiry—notwithstanding the difficulty of the task—avoids due-process concerns inherent in the conviction of a person who was insane at the time of the offense. *See Kahler v. Kansas*, __U.S.__, 140 S.Ct. 1021, 206 L.Ed. 2d 312 (2020) ("for hundreds of years jurists and judges have recognized insanity (however defined) as relieving responsibility for a crime"). But a retrospective inquiry is not the only option when determining competency to stand trial. And as the United States Supreme Court noted in *Drope*, a retrospective inquiry could be inadequate to protect the defendant's right to due process. *See id.* at 183.

**{¶ 41}** The retrospective inquiry suggested by the opinion concurring in part and dissenting in part would also create additional problems not present in the NGRI context. The opinion states that the trial court could "take testimony concerning Hough's competency at the time of his trial," opinion concurring in part and dissenting in part at ¶ 46, but the best source of such testimony would likely be the defendant's counsel. A retrospective inquiry could therefore require the disclosure of communications protected by the attorney-client privilege, attorney

work product, or the opinion of the attorney based on such protected material. That concern is not present in a hearing on an NGRI claim, since such a hearing is focused on a time before legal representation has begun.

{¶ 42} Given the passage of time in this case and the evidence discussed above, we cannot conclude that Hough's conviction is a presumption to be rebutted by evidence at a potential competency hearing held post-appeal. Hough had the right to a contemporaneous competency hearing under R.C. 2945.37(B). The trial court did not provide to Hough what is required by that statute. And the retrospective consideration that is inevitable in NGRI proceedings does not satisfy the requirement of the statute. Hough should be afforded what he was entitled to in the first instance; this necessitates vacating his conviction in order to provide, pursuant to the plain language of the statute, an inquiry into his competency that is contemporaneous with his trial, if the state chooses to retry Hough.

{¶ 43} We vacate Hough's convictions and remand the matter to the trial court.

### III. Conclusion

{¶ 44} We reverse the judgment of the Tenth District Court of Appeals, vacate Hough's convictions, and remand the cause to the trial court.

Judgment reversed,

convictions vacated,

and cause remanded.

O'CONNOR, C.J., and DONNELLY, J., concur.

STEWART, J., concurs in judgment only.

FISCHER, J., concurs in part and dissents in part, with an opinion.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

_____

**FISCHER, J., concurring in part and dissenting in part.**

**{¶ 45}** I concur in part and dissent in part because rather than vacating appellant Richard Hough's convictions, I would remand the case to the trial court for it to conduct a competency hearing. I agree with the lead opinion that the trial court erred by not holding a competency hearing, because the plain language of R.C. 2945.37(B) states that if the issue of competency is raised before trial, "the court *shall* hold a hearing on the issue." (Emphasis added.) I also agree with the lead opinion that there are indicia of Hough's incompetency in this case that demonstrate that the trial court's error may not have been harmless. However, I disagree with the lead opinion on the appropriate remedy.

**{¶ 46}** Competency to stand trial is a factual issue that should be determined in the first instance by the trial court. By vacating Hough's conviction, the lead opinion essentially makes a factual determination that Hough was incompetent at the time of his trial. But the trial court is in the best position to make this determination. At a competency hearing, the trial court not only can review the record in this case, but it also can take testimony concerning Hough's competency at the time of his trial. This court does not have the benefit of those resources in making a competency determination on appeal.

**{¶ 47}** The lead opinion concludes that this court is bound by United States Supreme Court cases that state that it is difficult to retrospectively determine a defendant's competency. Lead opinion, ¶ 40. However, the lead opinion and the United States Supreme Court fail to recognize that it is no more difficult than a court's analyzing a defendant's claim of not guilty by reason of insanity ("NGRI"). An NGRI plea requires a court to determine whether a defendant was insane at the time of the commission of an offense that may have occurred years or even decades earlier. Similarly, a competency hearing conducted after trial requires the court to determine whether, at the time of trial, a defendant was capable of understanding the proceedings and assisting in his or her defense. R.C. 2945.37(G). The evidence

for both analyses involves expert testimony on the defendant's previous mental state.

{¶ 48} If trial courts can effectively analyze NGRI claims by determining the defendant's mental state at the time of the offense, I see no reason why trial courts would be unable to retrospectively analyze competency by determining the defendant's mental state at the time of trial. This is especially true in cases such as this one in which the record reflects the defendant's mental state at the time of the trial and there are witnesses that could testify to such. The record in this case includes Hough's sentencing mitigation report, which includes Dr. McConnell's description of Hough's family background, school and work history, past legal troubles, medical and mental-health history, hospitalization records, and IQ-test results. Furthermore, Dr. McConnell analyzed and could testify as to Hough's diagnoses, intellectual functioning, and mental state at the time of trial.

{¶ 49} Because I believe the trial court can and should determine Hough's previous competency to stand trial in the first instance, I would reverse the decision of the court of appeals and remand the case to the trial court to conduct a competency hearing.

_____

**KENNEDY, J., dissenting.**

{¶ 50} I agree with the lead opinion that the trial court erred when it failed to hold a competency hearing when appellant, Richard M. Hough, filed a motion for competency evaluation prior to trial. *See* R.C. 2945.37(B). However, I part ways with the lead opinion when it concludes that the error was not harmless.

{¶ 51} The failure to hold a mandatory competency hearing is not subject to automatic reversal. *State v. Bock*, 28 Ohio St.3d 108, 109-10, 502 N.E.2d 1016 (1986). The question is whether, based on the totality of the evidence, Hough had the capacity to understand the criminal proceedings against him and to assist counsel in his defense. *See Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4

L.Ed.2d 824 (1960).  Because, based on the totality of the evidence before the trial court, the record does not demonstrate that Hough was incompetent to stand trial, the error was harmless.

{¶ 52} Therefore, I dissent from the majority's judgment and would affirm the judgment of the Tenth District Court of Appeals.

### Facts

{¶ 53} I agree with the facts set forth in the lead opinion and rely on them here.  But for purposes of this opinion, I highlight the following facts.

{¶ 54} Hough was indicted on November 7, 2017 and pleaded not guilty on December 1, 2017.  The matter was originally scheduled for trial on January 31, 2018, but was continued numerous times at the request of either the defendant, the state, or the parties jointly.

{¶ 55} On April 8, 2019, at the request of both parties, the trial court granted the ninth continuance of the trial date and rescheduled the trial to June 3, 2019.  On April 12, 2019, Hough's counsel filed two separate motions, a motion for competency evaluation and a motion for psychiatric evaluation.  On April 18, 2019, the trial court denied the motion for psychiatric evaluation, but it never addressed the motion for competency evaluation.  Hough did not ask the court to rule on the original motion for competency evaluation and did not renew the motion for competency evaluation.

{¶ 56} After two additional continuances, the trial began on August 26, 2019.  The trial court held a sentencing hearing on September 12, 2019, and at that hearing counsel mentioned the motion for competency evaluation.

### The trial court erred in failing to hold a competency hearing, but the error was harmless

{¶ 57} When the issue of a defendant's competency to stand trial is raised prior to the commencement of trial, Ohio law requires that the trial court hold a competency hearing.  R.C. 2945.37(B); *see also Bock*, 28 Ohio St.3d at 109, 502

N.E.2d 1016. There is no question that the trial court erred when it failed to hold a competency hearing. But that error can be harmless "where the record fails to reveal sufficient indicia of incompetency." *Id*. at 110, citing *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

{¶ 58} The lead opinion contends that the *Bock* court limited the inquiry to whether there are sufficient indicia of incompetency. I disagree.

{¶ 59} Competency and incompetency are two sides of the same coin. And in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), which the *Bock* court "construed and followed," *id.* at paragraph one of the syllabus, the Supreme Court stated that "[a] determination of [whether a defendant is entitled to a hearing] necessitates a detailed discussion of the conduct of the trial and *the evidence touching upon the question of [the defendant's] competence* at that time." (Emphasis added.) *Pate* at 378. The *Pate* court also stated that "the stipulation of [the director of the behavior clinic's] testimony was some evidence of Robinson's *ability to assist in his defense*." (Emphasis added.) *Id*. at 386. Had the court in *Pate* intended to exclude evidence of competency, there would have been no reason to discuss that evidence. Therefore, a reviewing court should consider the totality of the evidence, both evidence of incompetency and evidence of competency, when determining whether a trial court's error in failing to hold a competency hearing was harmless.

{¶ 60} Having established what evidence a reviewing court considers, I turn to the well-known test for determining legal competency to stand trial announced in *Dusky*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. When determining whether a defendant is legally competent to stand trial a trial court must inquire whether the defendant " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " *Id*. at 402, quoting the government's brief.

**{¶ 61}** This court first recognized the *Dusky* competency test in *State v. Chapin*, 67 Ohio St.2d 437, 439, 424 N.E.2d 317 (1981), and we have continued to apply it in the ensuing decades, *see, e.g.*, *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 56 (applying the *Dusky* test when assessing a defendant's competency to enter a guilty plea). The General Assembly codified this test in Ohio law and recognized that a defendant is incompetent if he "is incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense." R.C. 2945.37(G).

**{¶ 62}** Therefore, the evidence of incompetency must bear on the defendant's ability to understand the charges against him and to assist his counsel. *See Bock*, 28 Ohio St.3d at 110, 502 N.E.2d 1016.

**{¶ 63}** Hough filed a motion for competency evaluation prior to trial, and the trial court erred in failing to then hold a hearing to determine Hough's competency. The lead opinion concludes that the error was not harmless because "[t]here exist numerous indicia of Hough's incompetency in the record." Lead opinion, ¶ 32. But to reach this conclusion, the lead opinion relies on various statements in Dr. McConnell's confidential report that only establish Hough's mental-health diagnoses and cognitive deficits.

**{¶ 64}** But "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Bock* at 110. The same is true of cognitive deficits. As the Fourth Circuit has explained, " 'neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.' " *Walton v. Angelone*, 321 F.3d 442, 460 (4th Cir.2003), quoting *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir.2000).

**{¶ 65}** Dr. McConnell's confidential report establishes the *existence* of mental-health diagnoses and cognitive deficits, *see* lead opinion at ¶ 7-9, that *could possibly* affect Hough's ability to understand the proceedings or assist counsel, but there is no evidence in the report that Hough was in fact incompetent. The lead opinion misses the crucial step that the evidence must *bear* on Hough's competency to stand trial. And contrary to the lead opinion's determination, there is nothing in the record that supports the conclusion that this evidence affected Hough's capacity to understand the criminal proceedings against him and to assist his counsel in his defense.

**{¶ 66}** In fact, Dr. McConnell's confidential report contains evidence that Hough *did understand* the criminal proceedings against him and *was able* to assist counsel in his defense. Dr. McConnell began Hough's evaluation by explaining the purpose and nonconfidential nature of the evaluation, which Hough indicated that he understood. In the report, Dr. McConnell does not express doubt or question Hough's ability to comprehend. There is nothing in the report to indicate that Hough failed to cooperate or was difficult to deal with at any time during the evaluation.

**{¶ 67}** The report reveals that Hough was able to provide Dr. McConnell with extensive information for the evaluation. And with respect to Hough's orientation, Dr. McConnell observed in the report that Hough " 'was not able to provide [him] with the day of the week, date, month, or year, but recognized that he was in jail and had an upcoming court hearing. He understood that he was participating in an evaluation per the request of his defense counsel and the Court.' " Lead opinion at ¶ 8. Hough's knowledge of his upcoming court hearing, the purpose of the evaluation, and his cooperation in the evaluation bear on his capacity to understand the criminal proceedings and to assist counsel in his defense. And Hough's temporal confusion does not offer any support for incompetency—as Dr. McConnell's report fails to indicate that Hough's date-and-time confusion

impacted his understanding of the nature or consequences of the legal proceedings or even the evaluation process. The Eighth Circuit reached a similar conclusion when it determined that a defendant's memory lapses caused by a mild traumatic brain injury were not evidence of incompetency, because medical reports provided no indication the defendant was incapable of understanding the nature or consequences of the legal proceeding. *United States v. Dahl*, 807 F.3d 900, 904 (8th Cir.2015).

**{¶ 68}** Moreover, while the lead opinion discounts Hough's interactions with the trial court because they were far fewer than those in *Bock* and "less likely to reveal potential indicators of incompetency," lead opinion at ¶ 29, this court has determined that the demeanor of a defendant during trial is a relevant consideration on the question of incompetency. In *Bock*, 28 Ohio St.3d at 111, 502 N.E.2d 1016, we relied on the fact that "[t]he record reveal[ed] no adequate indication of any behavior on the part of the defendant which might indicate incompetency." And in *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 117, the court, while recognizing the defendant's interactions with the court during trial, stated that "the record reflects no behavior by [the defendant] during trial that would suggest the lack of legal competency." The lack of bizarre or irrational behavior by a defendant during proceedings before the trial court was also deemed relevant by the Ninth Circuit during its review of a trial court's decision not to hold a competency hearing. *Williams v. Woodford*, 384 F.3d 567, 605 (9th Cir.2004). Hough did not engage in any outbursts or bizarre or irrational behavior at any time during the proceedings.

**{¶ 69}** The testimony of Hough's friend, Tainta Butts, at his sentencing hearing also weighs against finding sufficient indicia of incompetency. Butts testified regarding the remorse Hough experienced because of his actions, stating:

[Hough] has had remorse about this situation for the past two years. He's been in my home living with me with this. He has expressed that he does not remember. He has expressed the fact that he does not remember about children being hurt, about Mrs. Griggs being killed, about Ms. Amanda being injured. He has very much so expressed his concern about that. He deals with it every day.

For him not to be in the courtroom and he may not show them, but, yes, he has emotions behind this. He has anger behind this. He expresses sorrow to the family about what has happened. He has tried to clean himself up as far as coming in here and doing the right thing.

He has never missed a court date. He has been here for every court date. We have sat out here for several hours and then get sent home. He is not trying to not take accountability.

Her testimony describes Hough as having a rational as well as factual understanding of the proceedings against him. *See Dusky*, 362 U.S. at 402, 80 S.Ct. 788, 4 L.Ed.2d 824.

{¶ 70} Finally, an examination of the statements by Hough's counsel to the trial court at sentencing are necessary. Counsel stated:

[Hough] has some very real diagnoses. He has shown over the course of this case tendencies to lose focus. Sometimes he responds to external stimuli to where it made me wonder whether or not he was competent. I tried to pull all the medical records that I could to get the background on whether or not he was competent. * * *

Please understand that competency and the other diagnoses that he has may seem like an excuse, but they're very real when it

28

comes to a criminal case. If he is hearing voices and does not know who he is and he thinks God is speaking to him, that goes to the heart of whether or not he can stand and/or sit in front of a Court and actually be helpful in his defense.

**{¶ 71}** The lead opinion notes that these statements are consistent with Dr. McConnell's report and determines they are a "clear indication" that Hough may not be competent. Lead opinion at ¶ 35. But again, the lead opinion's conclusion is inconsistent with caselaw and fails to complete the required analysis.

**{¶ 72}** This court has stated that " 'defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings.' " *State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, 179 N.E.3d 1216, ¶ 64, quoting *Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir.1991). However, here, counsel's concerns that Hough was hearing voices, not knowing who he was, and thinking God was speaking to him—standing alone—are not evidence of incompetency. As discussed above, "[a] defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Bock*, 28 Ohio St.3d at 110, 502 N.E.2d 1016. The focus must be on whether Hough's mental health affected his ability to understand the charges against him and assist his counsel. *See id.* For example, in *Dahl*, 807 F.3d at 903, the Eighth Circuit concluded that the deteriorating mental condition of the defendant did not demonstrate incompetency, because defense counsel did not represent that the change had caused the defendant to be unable to understand the proceedings or to assist in his defense.

**{¶ 73}** Hough's counsel did not advise the trial court that Hough's mental health prevented him from understanding the nature or consequences of the proceedings. Counsel also did not assert that Hough's mental health made him unable to assist in his defense. Instead, counsel's statements, at their core, question

whether Hough's mental health *might* impact his ability to assist in the defense, and that is insufficient to establish that he was incompetent to stand trial.

{¶ 74} The lead opinion brushes aside the fact that, after the initial motion, counsel did not raise the issue of competency again until sentencing, stating that "the *absence* of repeated requests does not indicate * * * that a defendant must be *competent*," (emphasis sic) lead opinion at ¶ 36. But this ignores our previous reliance on just that in *Bock*, in which we concluded that the record lacked sufficient indicia of incompetency. "Defense counsel, after the original motion for a hearing, failed ever again to mention the defendant's competency until the time for appeal." *Id*. at 111. And defense counsel's efforts here stand in stark contrast to counsel's efforts in *State v. Were*, 94 Ohio St.3d 173, 175, 761 N.E.2d 591 (2002).

{¶ 75} Defense counsel in *Were* raised the issue on several occasions *throughout* the proceedings: (1) in a pretrial motion, (2) after opening arguments, (3) during the trial, and (4) before the start of the mitigation phase.

{¶ 76} In *Were,* the court similarly considered whether the trial court's failure to hold a hearing on a pretrial competency motion was harmless error. *See id.* at 173-174. While the *Were* court found that the defendant's constitutional and statutory rights to a competency hearing were violated, it reached this conclusion based on not only the numerous requests for a hearing set forth above but also on counsel's many direct and indirect representations "to the court that they believed appellant to be incompetent," *id.* at 175. One defense attorney in *Were* who had served as a referee in probate court handling civil commitments expressed that "[b]ased on [his probate-court] experience, he believed that [the defendant] exhibited signs of paranoia and harbored suspicion against the defense team that, in counsel's view, could not be overcome." *Id.*

{¶ 77} Counsel in *Were* also claimed that the defendant's "failure to cooperate seriously hampered their ability to present a defense." *Id.* at 176. During the course of the proceedings, counsel filed motions to withdraw on two separate

occasions and a motion for a continuance because the defendant believed "counsel was taping confidential conversations and turning the tapes over to the state * * * [and he] refus[ed] to speak with them or any member of the defense team and h[e] refus[ed] to accept their correspondence." *Id.* The defendant in *Were* also filed numerous pro se motions to dismiss his attorneys, stating that they "were racially biased, had threatened his life, were conspiring with the prosecution, and had failed to adequately prepare for the mitigation phase." *Id.*

{¶ 78} But the evidence in *Were* is in stark comparison to the evidence in this case. Here, counsel made an initial request and made statements at sentencing. There is no evidence that Hough was suspicious of counsel, believed counsel was working against him with the state, or refused to talk or correspond with counsel. In other words, the record is devoid of any evidence that Hough was unable to consult with counsel with a reasonable degree of rational understanding.

## Conclusion

{¶ 79} I agree with the lead opinion that the trial court erred in failing to hold a competency hearing, in violation of Ohio law. However, this error was harmless. The totality of the evidence does not support a finding that Hough was incompetent at the time of trial. There is nothing in the record or in Dr. McConnell's report that indicates that Hough's mental-health diagnoses and cognitive deficits affected his capacity to understand the criminal proceedings against him or to assist counsel in his defense. Hough's counsel's assertions similarly fail. On the other hand, the evidence demonstrates that Hough understood the purpose of Dr. McConnell's evaluation, and there is no indication that he failed to cooperate. The record is devoid of any outbursts or bizarre or irrational behavior by Hough at any time during the proceedings. And Butts's testimony portrayed Hough as a man with a rational as well as factual understanding of the proceedings against him.

**{¶ 80}** Therefore, I dissent from the judgment of the majority and would affirm the judgment of the Tenth District Court of Appeals.

DEWINE, J., concurs in the foregoing opinion.

_____

G. Gary Tyack, Franklin County Prosecuting Attorney, and Sheryl L. Prichard, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Victoria Bader, Assistant Public Defender, for appellant.

_____